# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| MANUEL RIOS, | : | Case No. 1:20-cv-238 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| TOWER HILL SPECIALTY GROUP, LLC, and TOWER HILL INSURANCE GROUP, LLC, | : | |
| Defendants. | : | |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
## (Doc. 22)

This matter is before the Court on a motion to dismiss filed by Defendants Tower Hill Specialty Group, LLC ("THSG") and Tower Hill Insurance Group, LLC ("THIG"). (Doc. 22.) The target of the motion is Plaintiff Manuel Rios's First Amended Complaint ("FAC"). This matter is ripe for review.

### FACTUAL ALLEGATIONS

Plaintiff Rios lays out the following factual allegations in the FAC.

This case involves, chiefly, an individual, Plaintiff Manuel Rios, and three corporate entities: Defendant Tower Hill Insurance Group, LLC ("THIG"); Defendant Tower Hill Specialty Group, LLC ("THSG"); and Tower Hill Specialty, LLC ("Specialty"). THIG and THSG are named Defendants and will be collectively referred to as such where appropriate.

Tim Bienek, acting CEO of THIG, proposed creating an Ohio company under the Tower Hill name. This proposed company would go on to become Specialty and sell insurance products. THIG recruited Rios to become the CEO of Specialty. Rios agreed to create Specialty's business plan. In February 2017, THIG sent Rios an offer letter. Rios began work in March 2017. Although he acted as CEO of Specialty, THIG was his actual employer. (FAC, Doc. 19, ¶¶ 11-16.)

The ownership details concerning Rios's ownership share in Specialty were laid out in an Operating Agreement and Promissory Note prepared by THIG and/or THSG. (*Id.* at ¶ 17; Ex. 5 to Compl., "Operating Agreement," Doc. 1-5, Pg. ID 36; Ex. 6 to Compl., "Promissory Note," Doc. 1-6, Pg. ID 66.) Rios's annual base salary was set at $250,000. He was eligible for a performance bonus of up to 100% of his base salary. He was made a 10% owner of Specialty. THSG owned the other 90%. THSG, in turn, was owned entirely by THIG. THSG was to contribute $5 million toward Specialty's capital. Rios was to contribute $500,000. (FAC, Doc. 19, ¶¶ 18-27.)

One of the proposals to "bridge the gap for payment" was to replace Rios's bonus with equity, letting him "earn out" but also "contribute capital" with pre-tax dollars. (*Id.* at ¶ 28.) Accordingly, THSG and/or THIG forwarded Rios a Promissory Note. (Promissory Note, Doc. 1-6, Pg. ID 66.) The Promissory Note outlined, among other things, the capital payment arrangement between THSG and Rios for Rios's 10% ownership interest in Specialty. As such, it represented Rios's capital contribution for his 10% interest in Specialty. It provided that it would "be paid in annual installments beginning December, 2018, in an amount of 40% of the annual bonus [Rios] receives from

2

[Specialty]" through December 2022. (Promissory Note, Doc. 1-6, Pg. ID 66.) Rios executed the Promissory Note on June 6, 2018. Around the end of 2018, he received a bonus. THIG, however, informed him that Defendants would forego collection of 40% of his 2018 bonus under the Note. (FAC, Doc. 19, ¶¶ 29-34.)

In March 2019, Rios was terminated from his position as CEO of Specialty. Following his termination, he attempted to confirm with Defendants his 10% ownership interest in Specialty. He requested copies of the financials and other documents related to Specialty and the Operating Agreement. He alleges that he was denied access to Specialty's books and records, and that he has only received a limited summary of income statements and a balance sheet. (*Id.* at ¶¶ 35-37.)

In March 2020, Rios filed this lawsuit. He alleges that, after he filed suit, Defendants finally confirmed his ownership interest in Specialty. He further claims that he requested additional documents provided for under the Operating Agreement, but has not received most of the them. (*Id.* at ¶¶ 39-40.)

Another consequence of Rios's termination: he lost his status as a manager on Specialty's Board of Managers. On the Board were Rios, THSG, and William Shively. The current Board makeup is comprised of four corporate officers of THIG. He alleges that the fifth spot on the Board was for him to appoint, but his appointment "was limited to employees of Specialty, as owned and ran by Defendants." (*Id.* at ¶ 44.) He was only able to appoint his replacement after he filed this lawsuit. (*Id.*)

Further allegations include the claims that THSG is a member of Specialty, a Manager of Specialty, and an alter ego of Specialty's Board of Managers. THIG is the

3

100% owner of THSG and an alter ego of THSG and Specialty's Board of Managers. Accordingly, THSG, THIG, and Specialty's Board of Managers are "fundamentally indistinguishable." (*Id.* at ¶ 50.) Allegedly, THIG effectively controls Specialty's Board of Managers and/or the actions taken by the Board. Rios alleges that Defendants used their control over Specialty to commit wrongs against him. (*Id.* at ¶¶ 48-54.)

## ANALYSIS

The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint "for failure to state a claim upon which relief can be granted." Fed. R. Civ. R. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the plaintiff's cause of action as stated in the complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). The Court accepts the complaint's factual allegations as true; but this presumption of truth does not extend to a complaint's legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, surviving a motion to dismiss is a matter of pleading sufficient factual content. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009)). A claim for relief must be "plausible on its face." *Iqbal*, 556 U.S. at 678. That is, the complaint must lay out enough facts for a court to reasonably infer that the defendant wronged the plaintiff. *16630 Southfield*, 727 F.3d at 502. A complaint that lacks such plausibility warrants dismissal. *Iqbal*, 556 U.S. at 678.

Rios brings six claims against Defendants THSG and THIG. The FAC pairs counts 1 and 2 together, and does the same for counts 3 and 4. Counts 1 and 2 are for declaratory judgment on the Promissory Note and Operating Agreement. Counts 3 and 4 are for

4

breach of fiduciary duties and minority shareholder/member oppression. Count 5 is for conversion. Count 6 is for punitive damages.

Defendants move to dismiss the entire case. First, they argue that the FAC is an impermissible shotgun pleading. Second, they argue that Rios fails to state a claim under any count. They are incorrect on the first argument and partially correct on the second.

### A. "Shotgun Pleading"

Defendants' leading argument is that the FAC is an "impermissible shotgun pleading." (Doc. 22, Pg. ID 354.) Specifically, Defendants claim that Rios's pleading of all counts against both defendants makes it impossible to determine which allegations are against which Defendant.

A "shotgun pleading," a term that frequently appears in Eleventh Circuit caselaw, is generally "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). The Eleventh Circuit describes other types of shotgun pleadings as well. *Id.* at 1321-23.

The Sixth Circuit, however, does not use the term "shotgun pleadings" nearly as often. *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707, 713 (E.D. Mich. 2021). When it has, it has used it to refer to the plaintiff's failure to separate his causes of action or claims for relief into separate counts. *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 393 (6th Cir. 2020) (affirming dismissal in part because plaintiff pled all seven of her state-law causes of action in a single sentence). The Sixth Circuit's focus on a motion to dismiss is instead on

5

whether the complaint violates the Federal Rules of Civil Procedure. *Id.* For instance, in *Lee*, the seven-count/single-sentence complaint failed to connect specific facts or events with the various causes of action she asserted, in violation of Rules 8 and 10. *Id.* (quoting *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013)).

Here, although Rios combines some of the counts against both defendants, he advances enough factual matter to at least satisfy Rule 8(a)'s requirement to provide the defendants with notice of the claims against them and the grounds upon which the claims rest. *Lee*, 951 F.3d at 392-93. For each count or set of counts, he goes beyond incorporating the foregoing paragraphs and states facts unique to those counts. The FAC also satisfies Rule 10(b)'s requirement to state its claims in number paragraphs. *Id.* at 393.

As for Defendants' argument that it is "impossible" to determine which allegations are against which defendants—this argument fails. On the face of the pleading, Rios claims that Defendants are indistinguishable. So the pleading in effect alleges that both Defendants are liable for all counts.

Having found that the FAC is not a "shotgun pleading" warranting immediate dismissal, the Court will reach the merits of Defendants' Rule 12 arguments.

**B. Declaratory Judgment (Counts 1 and 2)**

Rios seeks the Court's declaration on two issues. First, he seeks the declaration that, under the Promissory Note, Defendants must reimburse him for the expenses and attorneys' fees associated with this lawsuit. (FAC, Doc. 19, ¶ 60.) Second, he seeks the declaration that he is entitled to access to all materials under Sections 8.2 ("Annual Statements"), 8.4 ("Records, Audits and Reports"), and 4.10 ("Company Books") of the

6

Operating Agreement. (*Id.* at ¶ 62; Ex. 5 to Compl., Doc. 1-5, Pg. ID 36-38.)

Defendants argue that both of these counts should be dismissed. First, they argue that the Promissory Note does not grant Rios any rights, and he is not entitled to attorneys' fees because he has not prevailed on claims to enforce the Promissory Note. Second, they argue that Rios's attempt to manufacture a dispute regarding denied access to documents does not establish an actual live controversy. The Court address both issues in turn.

### 1. Promissory Note

The Promissory Note contains an attorneys' fees provision:

> The Maker [Rios] hereby agrees to pay all out-of-pocket costs and expenses, including reasonable attorneys' fees, incurred by the Holder [THSG] in connection with the collection of the indebtedness evidenced by this Note, any modification hereof, or in enforcing or protecting any of the rights, powers, remedies and privileges of the Holder hereunder.

(Promissory Note, Doc. 1-6, Pg. ID 67.) Defendants assert, without contradiction from Rios, that Florida law governs the attorneys' fee question. Florida law provides for mutuality of attorneys' fees:

> If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees *to the other party* when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.

Fla. Stat. Ann. § 57.105(7) (emphasis added). *See also, e.g., Fla. Hurricane Prot. & Awning, Inc. v. Pastina*, 43 So. 3d 893, 895 (Fla. Dist. Ct. App. 2010). Rios alleges, without contradiction by Defendants, that Florida law "reads reciprocal fee shifting provisions into contracts, even when not expressly drafted therein." (FAC, Doc. 19, ¶ 58.)

Rios alleges that he has been attempting to cause Defendants to recognize his ownership rights in Specialty, as well as his entitlement to certain documents concerning Specialty. (FAC, Doc. 19, ¶ 56.) The Promissory Note is relevant, in his view, because his ownership rights in Specialty were supported in part by consideration in form of the Promissory Note. (*Id.* at ¶ 57.) And, because the Promissory Note entitles THSG to the payment of out-of-pocket expenses—including attorneys' fees—he seeks the declaration that the attorneys' fees provision operates reciprocally in his favor, pursuant to Florida's law on reciprocal attorneys' fees. (*Id.* at ¶ 60.)

Defendants make three arguments in support of dismissal of the cause of action arising under the Promissory Note. The Court will only address the first, because it is dispositive.

Defendants argue that Rios is not entitled to attorneys' fees, because he did not seek to enforce any rights under the Promissory Note. They recognize that the Operating Agreement grants Rios ownership rights. But they point out that that agreement does not contain an attorneys' fees provision. And the Promissory Note's attorneys' fee provision, they maintain, "is not an add-on to any dispute between the parties that Plaintiff can use to create an attorney's fees entitlement." (Doc. 22, Pg. ID 358.) Opposed, Rios argues that he had to file this lawsuit in order to get to Defendants to admit the Operating Agreement and Promissory Note are valid and enforceable.

The problem for Rios is that his ownership rights come from the Operating Agreement, not the Promissory Note. (FAC, Doc. 19, ¶¶ 27, 39; Ex. B to Operating Agreement, Doc. 1-5, Pg. ID 64.) To be sure, the Promissory Note acknowledges the

8

Operating Agreement. (Promissory Note, Doc. 1-6, Pg. ID 66.) And, further, Rios alleges that the Promissory Note secures the capital contribution for his 10% ownership interest. (*Id.* at ¶¶ 33, 57.) But the two are separate legal documents. Rios claims that, in filing the original complaint, he was "successful in enforcing the Promissory Note." (Doc. 23, Pg. ID 378.) But the supportive allegations he cites pertain to confirming ownership rights he had under the Operating Agreement—not the Promissory Note. (FAC, Doc. 19, ¶¶ 39, 60.)

Exhibit B to the Operating Agreement makes the basis for his interest especially clear. (Ex. B to Operating Agreement, Doc. 1-5, Pg. ID 64.) That exhibit is expressly incorporated into the Operating Agreement through Sections 1.1(u), 3.2, 3.3, 3.6, and 12.8. (*Id.* at Pg. ID 39, 41, 43, 60.) It plainly lays out his 10% membership interest. (*Id.* at Pg. ID 64.) So, although Rios's $500,000 initial capital contribution is allegedly secured by the Promissory Note, his actual interest stems from the Operating Agreement.

This situation, then, lies outside the scope of § 57.105(7). That statute applies when a contract contains an attorneys' fee provision and a party takes action to enforce the contract. *See* Fla. Stat. § 57.105(7). But here, although the Promissory Note contains such a provision, Rios took legal action to enforce the Operating Agreement, not the Promissory Note. Rios cites no law showing that an attorneys' fee provision in one document (here, the Promissory Note) applies reciprocally when enforcing the provisions of a separate instrument (here, the Operating Agreement). Indeed, Florida courts indicate that § 57.105(7) "is designed to even the playing field, not expand it beyond the terms of the agreement." *Fla. Hurricane Prot. & Awning, Inc. v. Pastina*, 43 So. 3d 893, 895 (Fla. Dist.

9

Ct. App. 2010). Here, it would expand the terms of the Operating Agreement to incorporate into it an attorneys' fee provision that only exists in a related-but-separate instrument.

In sum, Rios has not pointed to an attorneys' fee provision within the four corners of the Operating Agreement. And that is the agreement that contains the ownership provisions he is attempting to enforce. He cites no law showing that Florida courts treat § 57.105(7) as so broad that it incorporates the attorneys' fee provision of another instrument into the agreement where a party's rights actually exist. For these reasons, Rios has not stated a claim for entitlement to declaratory judgment arising under the Promissory Note.

Accordingly, the Court grants Defendants' motion to dismiss with respect to Rios's cause of action regarding the Promissory Note.

### 2. Operating Agreement

Rios alleges that the Operating Agreement entitles members to access to certain corporate documents. (FAC, Doc. 19, ¶ 61.) In particular, sections 8.2, 8.4, and 4.10 entitle members to annual statements, various records, audits, and reports, and company books. (FAC, Doc. 19, ¶¶ 61-62; Operating Agreement, Doc. 1-5, Pg. ID 49, 56-57.)

Defendants move to dismiss this claim, arguing that there is no controversy related to Rios's document requests. Some procedural background is instructive here. Rios had previously requested declaratory relief for confirmation of his 10% ownership interest in Specialty. (Compl., Doc. 1, ¶ 76.) Defendants point out that they had not denied his ownership interest and that Rios "attached . . . numerous documents evidencing that

10

interest." (Doc. 22, Pg. ID 360.) Now, in Defendants' view, Rios has abandoned that claim in favor of seeking declaratory relief to his entitlement of "some unspecified universe of documents." (Doc. 22, Pg. ID 360.) But this claim also fails, they say, because there is no actual controversy.

That is because, in Defendants' telling, the document controversy was engineered by Rios. They claim that Rios sent them a demand dated June 8, 2020, requesting a reply only four days later, by June 12, 2020, for various corporate documents without regard to whether they existed or whether Rios was entitled to them. They maintain that Rios's demand was "an attempt to manufacture a controversy" by requesting many documents within a four-day deadline so that he could raise corresponding allegations in the FAC. (Doc. 22, Pg. ID 357.) They go on to claim that Rios does not allege that Defendants denied that he was entitled to "any specific document," which documents he is waiting to receive, or how the Operating Agreement entitles him to receive those documents. (*Id.* at Pg. ID 361.)

Defendants' arguments fail here. They argue facts outside the pleadings, yet do not ask this Court to convert their motion to one for summary judgment, so their argument pertaining to the four-day deadline is misplaced. If it is true, as Defendants go to great lengths to explain, that there is "no actual dispute" (Doc. 24, Pg. ID 388-789), then the parties may resolve this claim themselves and submit to the Court an appropriate filing dismissing that claim. As to their claim that Rios does not make arguments related to specific documents or how the Operating Agreement specifically entitles him to the documents, neither Rule 8 nor Rule 12(b)(6) ask for so much. The allegations that

11

Defendants denied Rios access to records outlined in the Operating Agreement is enough to put them on notice and to state a valid claim under that agreement. (*See* FAC, Doc. 19, ¶¶ 61-62.)

Accordingly, the Court denies Defendants' motion to dismiss with respect to Rios's cause of action regarding the Operating Agreement.

### C. Breach of Fiduciary Duty (Counts 3 and 4)

The Operating Agreement's choice of law section provides that Ohio law applies. (Operating Agreement, § 12.2, Doc. 1-5, Pg. ID 59.) The elements of a claim of breach of fiduciary duty in Ohio are (1) the existence of a duty arising from a fiduciary relationship, (2) the failure to observe the duty, and (3) an injury resulting proximately from that breach. *Puhl v. U.S. Bank, N.A.*, 34 N.E.3d 530, 536 (Ohio Ct. App. 2015).

Evaluating the FAC for allegations of a breach of fiduciary duty, the Court finds that the pleadings suffice. Ohio law applicable at the time provided that members of a limited liability company owe to each other are the fiduciary duties of loyalty and care — a point Defendants concede. R.C. 1705.281 (2016). (*See* Doc. 22, Pg. ID 362.) And Rios alleges that Defendants were fellow members and owed him such duties. (FAC, Doc. 19, ¶ 65.) THSG was the majority member and the manager of Specialty, owning 90% of Specialty. (FAC, Doc. 19, ¶¶ 41, 64.) THIG is allegedly the 100% owner of THSG, and an alter ego of THSG and Specialty's Board of Managers. (*Id.* at ¶ 49.) Rios was the minority member and owned 10% of Specialty. (*Id.* at ¶ 41.) They were all thus, allegedly, co-members of Specialty. Accordingly, Rios has adequately alleged that Defendants owed him fiduciary duties.

Second, Rios satisfactorily alleges that Defendants failed to observe their fiduciary duties toward him. Specifically, he alleges that Defendants failed to deliver financial statements to him; denied him access to various business records; denied him information that would enable to make informed decisions about his ownership interest in Specialty, Specialty's financial condition, and his capital contributions to Specialty; diluted his minority equity interests; used majority control to increase their advantage without providing him an equal chance to benefit; retaliated against him for exercising his legal rights; tried to squeeze him out by impermissibly accelerating his debt on the Promissory Note, and then tried to squeeze him out again by offering to withdraw their demand for early payment on the Promissory Note in exchange for extinguishing his ownership rights; and made illegitimate capital calls to dilute his ownership interest. (*Id.* at ¶ 67.) Defendants mischaracterize these detailed factual allegations as conclusory, vague, and generalized. To the contrary, these allegations plausibly support the claim that Defendants breached fiduciary duties they owed to Rios. *See, e.g., 16630 Southfield*, 727 F.3d at 502; *In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig.*, 604 F. Supp. 2d 1128, 1149 (S.D. Ohio 2009).

Third, Rios adequately pleads an injury resulting from the alleged breaches. He claims that his ownership interest in Specialty was reduced from 10% down to 4.072%. (FAC, Doc. 19, ¶ 73.) That interest was further halved later. (*Id.* at ¶ 76.) On top of his reduced ownership interest following the allegedly oppressive and retaliatory capital calls, he alleges further damages of $75,000. (*Id.* at ¶ 80.)

In light of these allegations, Rios has sufficiently laid out claims for breach of

fiduciary duty. Accordingly, the Court denies the motion to dismiss regarding the breach of fiduciary duty counts.

### D. Conversion (Count 5)

"[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 551 N.E.2d 172, 175 (Ohio 1990). The elements of a conversion cause of action are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *Manshadi v. Bleggi*, 134 N.E.3d 695, 705 (Ohio Ct. App. 2019).

Defendants argue that Rios fails to allege any rights to ownership beyond the contractual rights set forth in the Operating Agreement, citing a Report and Recommendation. *De Vries Dairy, LLC v. White Eagle Co-op. Ass'n*, No. 3:09 CV 00207, 2011 WL 3349356, at *6 (N.D. Ohio Mar. 8, 2011), *report and recommendation adopted in relevant part, rejected in other part sub nom. DeVries Dairy, LLC v. White Eagle Co-op. Ass'n*, No. 3:09CV207, 2011 WL 3349067 (N.D. Ohio July 29, 2011). That opinion states that a conversion claim lies against a contracting party, independent of a breach of contract claim, so long as the plaintiff alleges a breach of duty that is owed separately from any contractual obligations. *Id. See also DeNune v. Consol. Cap. of N. Am., Inc.*, 288 F. Supp. 2d 844, 854 (N.D. Ohio 2003). While this is a legitimate tort principle, *see Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976), Defendants face two hurdles: First, they do not explain why the conversion allegations fail to plead the three elements of a

14

conversion claim. And, second, in any event, Rios has stated a claim for breach of fiduciary duties, which are duties independent of contract.

As it is, Rios has pled the necessary elements. He alleges that he has an ownership in Specialty (element one); Defendants diluted his interests when they issued Capital Call No. 1 and demanded he contribute over $800,000 within two weeks or suffer dilution (element two); and he suffered damages exceeding $75,000 when his ownership interests were diluted (element three). (FAC, Doc. 19, ¶¶ 82-84.) Defendants' arguments to the contrary pertain to merits outside the pleadings that the Court cannot assess at this Rule 12 stage.

Accordingly, the Court denies Defendants' motion to dismiss the conversion claim.

### E. Punitive Damages (Count 6)

Rios makes claims for punitive damages, both as an independent cause of action and in his prayer for relief.

Defendants argue that Ohio does not allow a cause of action solely for punitive damages, because punitive damages are a form of relief that derive from other causes of action. They are correct. Punitive damages are not independent remedies. They are awarded as "punishment for causing compensable harm and as a deterrent against similar action in the future." *Niskanen v. Giant Eagle, Inc.*, 912 N.E.2d 595, 599 (Ohio 2009) (quotation omitted). Thus, a cause of action simply for punitive damages cannot be maintained. *Id.* So the Court must dismiss Rios's punitive damages cause of action.

Defendants' motion also targets Rios's broader claim for punitive damages. They

15

argue that he fails to allege actual malice. Actual malice is necessary for an award of punitive damages. *Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987). The Ohio Supreme Court has defined actual malice as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.*

Rios makes no effort to point out where he pleads actual malice. He cites generally to several paragraphs from the FAC. (*See* FAC, Doc. 19, ¶¶ 67-80, 85-87.) The Court has reviewed those allegations. But Rios fails to explain why or how any of that factual content meets the specific actual malice pleading standard that applies here.

Accordingly, the Court grants Defendants' motion to dismiss Rios's claim for punitive damages.

## CONCLUSION

For the reasons above, the Court orders as follows:

(1) The Court **GRANTS** Defendants' motion to dismiss regarding Count 1, Declaratory Judgment on Promissory Note.

(2) The Court **DENIES** Defendants' motion to dismiss regarding Count 2, Declaratory Judgment on Operating Agreement.

(3) The Court **DENIES** Defendants' motion to dismiss regarding Counts 3 and 4, Breach of Fiduciary Duties and Minority Shareholder/Member Oppression.

(4) The Court **DENIES** Defendants' motion to dismiss regarding Count 5, Conversion.

(5) The Court **GRANTS** Defendants' motion to dismiss regarding Count 6, punitive damages, and **DISMISSES** Plaintiff's request for punitive damages as a remedy.

In light of the above, this matter will proceed on Counts 2, 3, 4, and 5.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND